# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHARLES T. MONROE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil Action No. 09-238-SLR |
| | ) |
| PERRY PHELPS, Warden, | ) |
| and JOSEPH R. BIDEN, III, | ) |
| Attorney General of the State | ) |
| of Delaware, | ) |
| | ) |
| Respondents. | ) |

Charles T. Monroe. Pro se petitioner.

Gregory E. Smith, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

## MEMORANDUM OPINION

November  9  , 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Petitioner Charles T. Monroe ("petitioner") is a Delaware inmate in custody at the James T. Vaughn Correctional Center in Smyrna, Delaware. Presently before the court is petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 2) For the reasons that follow, the court will dismiss his application.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On May 6, 2004, Wilmington police officers Robert Fox and Charles Puit were on routine patrol when they observed a vehicle with a handwritten cardboard license plate. *See Monroe v. State*, 913 A.2d 570 (Table), 2006 WL 3482182 (Del. Dec. 4, 2006). The officers ran the tag number and discovered that the registration on the vehicle had expired in March 2003. The officers stopped the vehicle and asked the driver, petitioner, for his license, registration, and proof of insurance. *Id*.

In the process of checking his identification, the officers discovered that petitioner had a criminal history that included weapon offenses. *Id*. Upon returning to petitioner, the officers asked him to leave his vehicle because it would be impounded due to its expired registration and petitioner's failure to provide proof of insurance. After petitioner got out of the car, the officers asked him if he had any weapons or drugs. Petitioner did not answer. Officer Fox then directed petitioner to place his hands on the trunk of the car so that the officers could pat him down for weapons. *Id*.

During the pat down search, Officer Fox felt something hard in the small of petitioner's back. *Id*. When asked what it was, petitioner said it was a back brace. Petitioner then attempted to flee. The officers grabbed petitioner and struggled with

him before wrestling him to the ground. Once petitioner was in handcuffs, the officers further searched him, discovered ammunition, and arrested him. Id.

In June 2004, the New Castle County grand jury indicted petitioner on nine charges: possession of a deadly weapon by a person prohibited; possession of ammunition by a person prohibited; possession of a weapon in a safe school zone; carrying a concealed deadly weapon; third degree assault; offensive touching; resisting arrest; driving an unregistered motor vehicle; and no proof of insurance. See State v. Monroe, 2008 WL 2210623 (Del. Super. May 19, 2008). In November and December 2004, petitioner moved to represent himself. (D.I. 12 at 2) Petitioner also moved to suppress the weapon found on his person at the time of his arrest. On January 4, 2005, the Superior Court granted petitioner's motion to proceed pro se and, after holding a hearing, denied his motion to suppress. Following a two-day trial, a Superior Court jury found petitioner guilty of all charges except the charge for third degree assault. In February 2005, the Superior Court sentenced petitioner as a habitual offender to a total of twelve years of incarceration, suspended after nine years, for two years of probation. Id. at 2-3.

Acting pro se, petitioner appealed his convictions and sentences. See Monroe v. State, 968 A.2d 492 (Table), 2009 WL 189158 (Del. Mar. 6, 2009). In October 2005, the Delaware Supreme Court remanded the matter to the Superior Court for an evidentiary hearing regarding the voluntariness of petitioner's decision to proceed pro se on appeal. The Superior Court held an evidentiary hearing and issued an order that petitioner must proceed pro se if he was unwilling to accept the services of the attorney

originally assigned to represent him. After the case was returned from remand, the Delaware Supreme Court appointed conflict counsel to represent petitioner on appeal. Through counsel, petitioner filed an amended opening brief. The Delaware Supreme Court affirmed petitioner's convictions and sentence on December 4, 2006. *Id.*

In November 2007, petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), alleging ineffective assistance of counsel and other claims. The Superior Court denied the Rule 61 motion, and the Delaware Supreme Court affirmed that decision. *See generally Monroe*, 2008 WL 2210623.

Petitioner timely filed the instant application in this court. The State filed an answer, arguing that four claims in the application are procedurally barred from federal habeas review, and that the other two claims do not warrant relief under § 2254(d).

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). One prerequisite to federal habeas review is that a petitioner must exhaust all remedies available in the state courts. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by "fairly presenting" the substance of the federal habeas claim to the state's highest court, either on direct appeal or in a post-conviction

3

proceeding, and in a procedural manner permitting the state courts to consider it on the merits. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although deemed exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51(1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

4

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - -whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits,[1] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see*

---

[1]A state court decision constitutes an adjudication on the merits for the purposes of § 2254(d) if the decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

also Williams v. Taylor, 529 U.S. 362, 412 (2000); Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).

When reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000); Miller-El v. Cockrell, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

Petitioner presents six claims in his application:[2] (1) ineffective assistance of appellate counsel; (2) the trial court denied petitioner his right of effective cross-examination by failing to provide transcripts from his suppression hearing for use at trial and by failing to subpoena a witness; (3) his characterization as a habitual offender was invalid; (4) he was denied his right to representation by counsel during the trial; (5) the trial court improperly admitted unauthenticated evidence; and (6) the trial court's improper jury instruction resulted in a coerced verdict. The State contends that claims one and two do not warrant relief under § 2254(d), and that claims three through six should be denied as procedurally barred.

---

[2]For ease of analysis, the court has re-numbered petitioner's claims without changing the substance contained therein.

6

## A. Claim One: Ineffective Assistance of Counsel

Once appointed to represent petitioner on direct appeal, appellate counsel re-raised the following claims that petitioner had presented in his original pro se appellate brief: (1) Officers Fox and Pruit lacked authority to conduct a pat down search incident to conducting an inventory of petitioner's vehicle; and (2) the Superior Court unfairly prevented petitioner from mounting an effective attack on Officer Fox's credibility by refusing to subpoena Ms. Church as a witness; by denying him a copy of the radio communication between the police vehicle and central dispatch; and by failing to provide him with a copy of the transcript from the suppression hearing. *See Monroe,* 2006 WL at \*2-3. Now, in claim one, petitioner contends that counsel provided ineffective assistance by failing to re-raise the following claims on direct appeal: petitioner was denied his Sixth Amendment right to representation by counsel during his trial; petitioner's status as an habitual offender was invalid; the Superior Court erred in admitting the unauthenticated back brace as evidence during the trial; and the Superior Court gave an erroneous jury instruction. Petitioner also asserts that appellate counsel failed to "incorporate the fact of Officer Fox's multiple contradictions into the illegal search and seizure argument" and "support the other issues with any precedent, procedural or statute citations."[3] (D.I. 2 at ground six) Because the Delaware Supreme

---

[3]Petitioner does not identify the "other issues" counsel allegedly failed to appropriately support. However, having reviewed petitioner's Rule 61 motion for post-conviction relief, the court construes petitioner's instant argument to be that counsel failed to provide legal citations for the claim alleging that he was denied his right to effective cross-examination due to the absence of the suppression hearing transcript. (D.I. 14, App. to Appellant's Op. Br. in *Monroe v. State,* No.271,2008 at A-26) To the extent petitioner may be arguing that counsel failed to provide legal citations for the other issues raised on direct appeal, the argument is procedurally barred from habeas

7

Court adjudicated these arguments contained in claim one on the merits during petitioner's post-conviction appeal, the court can only grant habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established federal law governing ineffective assistance of counsel claims is the two-pronged standard announced in *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. The second *Strickland* prong requires a petitioner to demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689. Claims of ineffective assistance of appellate counsel are evaluated under the same *Strickland*

---

review because he did not present this claim to the Delaware Supreme Court on post-conviction appeal. Petitioner has not alleged cause for, and prejudice resulting from, his default of this possible alternate argument, and he has also failed to demonstrate that the default should be excused to prevent a miscarriage of justice.

standard applicable to trial counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004).

In this case, the Delaware Supreme Court denied the instant ineffective assistance of counsel allegations after correctly identifying the *Strickland* standard. Therefore, the court concludes that the Delaware Supreme Court's denial of claim one was not contrary to *Strickland*. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court's inquiry is not over, however, because it must also determine if the Delaware Supreme Court's decision warrants relief under the "unreasonableness" prong of the § 2254(d)(1) test. A state court's decision regarding an ineffective assistance of counsel claim is owed "double deference" when reviewed under § 2254(d)(1), because

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). **When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."**

*Harrington v. Richter*, 131 S.Ct. 770, 788 (2011)(emphasis added)(internal citations omitted). When assessing the reasonableness of counsel's performance under *Strickland*, there "is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Richter*, 131 S.Ct. at 790. When assessing prejudice under *Strickland*, the question is "whether it is

9

reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 786.

The court will review petitioner's ineffective assistance allegations under this "doubly deferential" standard in seriatim.

### 1. Appellate counsel's failure to raise certain claims on appeal

Petitioner contends that appellate counsel was ineffective because the brief he filed in petitioner's direct appeal omitted several "meritorious claims" petitioner had included in the original pro se appellate brief. (D.I. 2 at ) It is well-settled that an attorney's decision about which issues to raise on appeal are strategic,[4] and an attorney is not required to raise every possible non-frivolous issue on appeal. *See Smith v. Robbins*, 528 U.S. 259, 272 (2000); *Jones v. Barnes*, 463 U.S. 745 (1983). In fact, appellate counsel acts well within the bounds of objectively reasonable professional norms by "winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

Here, appellate counsel's correspondence to petitioner demonstrates that

---

[4]*See Albrecht v. Horn*, 485 F.3d 103, 138 (3d Cir. 2007); *Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999)(counsel is afforded reasonable selectivity in deciding which claims to raise without the specter of being labeled ineffective).

counsel was aware of the issues petitioner initially raised in his pro se appellate brief, but counsel decided to pursue only those claims he believed were potentially meritorious. (D.I. 14, App. to State's Ans. Br. in *Monroe v. State*, No.271,2008, at B-20) Petitioner's conclusory allegation that the omitted arguments were meritorious does not overcome the strong presumption that counsel's conduct fell within a range of reasonable professional assistance or demonstrate that a reasonable appellate strategy would have included presenting the claims identified by petitioner. Additionally, petitioner has failed to demonstrate a reasonable probability that the outcome of his appeal would have been different but for appellate counsel's failure to raise these claims. Thus, the court concludes that the Delaware Supreme Court's denial of petitioner's allegations regarding appellate counsel's performance in this respect constituted a reasonable application of *Strickland.*

### 2. Appellate counsel's failure to sufficiently argue the insufficient illegal search and seizure claim

Petitioner also contends that counsel inadequately argued the illegal search and seizure claim that was presented on direct appeal by failing to provide the Delaware Supreme Court with examples of Officer Fox's "multiple" contradictory statements. To begin, the court notes that appellate counsel devoted one-third of the opening brief to the illegal search and seizure argument, and recited at least one of Officer Fox's comments to support the contention that the police illegally searched petitioner incident to their inventory search of his vehicle. Moreover, in this proceeding, petitioner has not identified the "multiple" contradictory statements Officer Fox allegedly made during the suppression hearing and the trial and, after independently comparing Officer Fox's

11

testimony at the suppression hearing against his testimony at trial, the court finds that any alleged inconsistencies in Officer Fox's testimony were minor, at best. Given this record, the court cannot conclude that appellate counsel's "failure" to include more examples of Officer Fox's allegedly contradictory statements in the brief was objectively unreasonable.

Additionally, petitioner has failed to establish a reasonable probability that including more of the allegedly contradictory statements in the appellate brief would have resulted in a different result. Appellate counsel argued that the search and seizure was illegal because there was no "particularized basis supporting a fear for officer safety" justifying a pat-down search. (D.I. 14, Appellant's Op. Supplemental Memorandum in *Monroe v. State*, No.94,2005 at 1) Counsel asserted that the officers "made a judgment to impound, and inventory, petitioner's vehicle while they were seated in their own vehicle observing the computer display of petitioner's criminal record and his vehicle's DMV record," *Id.*, and that the alleged need for the pat-down search was generated strictly by the fact that the police officers intended to place petitioner temporarily in the patrol vehicle during the inventory of petitioner's car. (D.I. 14, Appellant's Op. Br. in *Monroe v. State*, No.94,2005 at 10) Counsel also contended that "the mere absence of an insurance card d[id] not point to a legitimate concern for officer safety," and petitioner's "record of a prior weapons offense d[id] not establish legitimate concern for officer safety." (D.I. 14, Appellant's Op. Supplemental Memorandum in *Monroe v. State*, No.94,2005 at 1) Counsel concluded his argument by asserting that the "justification offered by Officers Fox and Puit d[id] not meet the minimum federal standard for a pat-down search" requiring a particularized threat to

12

officer safety as explained in *Terry v. Ohio*, 392 U.S. 1 (1968), *PennysIvania v. Mimms*, 434 U.S. 106 (1977), and *Knowles v. Iowa*, 525 U.S. 113 (1998). (D.I. 14, Appellant's Op. Br. in *Monroe v. State*, No.94,2005 at 10-11)

The Delaware Supreme Court rejected this argument after reaching the following three conclusions. First, the officers' initial stop of the vehicle was valid because the stop was premised on the fact that the car's registration was expired. Second, pursuant to *Mimms*, the officers were permitted to ask petitioner to step out of the car during a routine stop. And finally, the totality of the circumstances demonstrated that the police had a reasonable articulable suspicion to perform a *Terry* search premised on officer safety. *Monroe*, 2006 WL 3482182, at *2. Specifically, the Delaware Supreme Court explained that,

> [a]lthough [petitioner's] prior criminal history, by itself, was insufficient to establish reasonable articulable suspicion, that history, combined with [petitioner's] nervous demeanor and refusal to answer the officer's question [as to whether petitioner had any drugs or weapons], was sufficient to establish a reasonable articulable suspicion.

*Id.*

As an initial matter, it is not clear that Officer Fox's alleged contradictory statements are even relevant to the articulable suspicion inquiry because petitioner has not identified the statements he believes were contradictory.

Nevertheless, in this proceeding, petitioner does not challenge the validity of the initial stop and he does not dispute that the car's registration was expired and that he did not have proof of insurance. Additionally, according to well-settled Supreme Court precedent, a court determining whether an officer had a reasonable articulable suspicion to conduct a *Terry* search must examine the totality of the circumstances and

13

consider both a "particularized and objective basis for suspecting the particular person stopped of criminal activity," which, in turn, includes a trained officer's commonsense judgments and inference about human behavior. *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). Relevant factors to be considered in determining reasonable suspicion include whether the *Terry* stop occurred in a high crime area; the suspect exhibited nervous or evasive behavior; and the suspect fled from the police. *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000). Significantly, in this proceeding, petitioner has not provided any clear and convincing evidence to rebut the Delaware Supreme Court's factual finding that he did not respond when Officer Fox asked him if he had any drugs or weapons, and that he acted nervously when asked to step out of the car. These factual findings are the type of factors relevant to finding the presence of a reasonable articulable suspicion for a *Terry* search, and petitioner's vague assertion regarding counsel's failure to include more of Officer Fox's contradictory statements in the appellate brief does not demonstrate a reasonable probability that the outcome of his appeal would have been different but for counsel's failure to include such statements. Therefore, the court will deny this portion of claim two for failing to satisfy § 2254(d)(1).

### 3. Appellate counsel's failure to adequately argue the "suppression hearing transcript/denial of effective cross-examination" claim

Finally, petitioner contends that appellate counsel was ineffective for failing to support the "failure to provide transcript/denial of right to effective cross-examination" claim with legal citations. It is well-settled that an attorney's failure to present a meritless argument does not constitute constitutionally ineffective assistance. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). As explained in the next

section of this opinion, the court rejects as meritless petitioner's argument that his right to effective cross-examination was violated when the trial court failed to provide him with a suppression hearing transcript. *See infra* at 15-17. Consequently, the court concludes that counsel's method of presenting or supporting this meritless issue cannot constitute ineffective assistance. Accordingly, the court will deny claim one in its entirety for failing to satisfy § 2254(d)(1).

## B. Claim Two: Denial Of Petitioner's Right To Effective Cross-Examination

The Confrontation Clause of the Sixth Amendment provides, in relevant part, that "in all criminal prosecutions, the accused shall enjoy the . . . right to be confronted with the witnesses against him." U.S. Const. amend. VI. One of the primary protections derived from the confrontation clause is the right to effective cross-examination of the State's witnesses. *See Crawford v. Washington*, 541 U.S. 36, 61 (2004). In turn, one function of the constitutionally protected right of cross-examination is to "attack the witness' credibility" by revealing possible "biases, prejudice, or ulterior motives." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Nevertheless, the "Confrontation Clause guarantees only "an **opportunity** for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)(emphasis in original).

In claim two, petitioner contends that the trial court denied his right to effective cross-examination by failing to provide the transcript from the suppression hearing and by failing to subpoena Ms. Church as a witness. Petitioner presented these same issues to the Delaware Supreme Court on direct appeal as part of a single claim contending that he was unfairly prevented from effectively attacking Officer Fox's

15

credibility. The Delaware Supreme Court rejected the arguments after concluding that "the Superior Court's rulings are firmly rooted in the trial court's discretion as a matter of trial management." *Monroe*, 2006 WL 3482182, at *2. Although the Delaware Supreme Court did not cite to the aforementioned Supreme Court precedent when denying the two arguments presented in claim two, the court concludes that the Delaware Supreme Court's decision was not contrary to clearly established federal law. Notably, petitioner has not cited to, and the court has not found, any case of the United States Supreme Court involving materially indistinguishable facts where that Court reached decision different from the Delaware Supreme Court's decision in this case. *See Williams*, 529 U.S. at 413.

Furthermore, as set forth below, after reviewing the two issues in seriatim, the court concludes that the Delaware Supreme Court's decision did not involve an unreasonable application of governing Supreme Court precedent.

### 1. Failure to provide the suppression hearing transcript

The Superior Court held a suppression hearing on January 4, 2005, and petitioner's case proceeded to trial on January 5, 2005. Although petitioner did not request the suppression hearing transcripts before trial, he asserts that he made "oral motion for a continuance to have the [suppression hearing] transcripts prepared" on the first day of trial. (D.I. 2 at Ground Four) According to petitioner, the trial court denied his request. On direct appeal, petitioner argued that the failure to provide the transcript for use during his cross-examination of Officer Fox prevented him from effectively showing that Officer Fox perjured himself. The Delaware Supreme Court implicitly held that unavailability of the suppression hearing transcript did not violate petitioner's right

16

to effective cross-examination under the confrontation clause, because he was able to

"present the substance of his argument through cross-examination of Officer Fox

without the aid of word-by-word transcription from the suppression hearing." Monroe v.

State, 2006 WL 3482182, at *2-3.

Now, in this proceeding, petitioner contends that the Delaware Supreme Court's

decision warrants relief under § 2254(d). This argument is unavailing. As explained by

the United States Supreme Court in Fensterer,

> the Confrontation Clause includes no guarantee that every witness called by the
> prosecution will refrain from giving testimony that is marred by forgetfulness,
> confusion, or even evasion. To the contrary, the Confrontation Clause is
> generally satisfied when the defense is given a full and fair opportunity to probe
> and expose these infirmities through cross-examination []."

Fensterer, 474 U.S. at 21-2. Notably, the trial transcript in this case reveals that

petitioner persistently questioned Officer Fox about any alleged contradictions between

his suppression hearing testimony and his trial testimony in an attempt to show that

Officer Fox had repeatedly committed perjury and that his testimony should not be

believed. The transcript also reveals that petitioner aptly presented the substance of

his argument during his cross-examination of Officer Fox. For instance, during his

cross-examination, petitioner told the judge in front of the jury that

> I'm referring directly to Officer Fox's credibility. He has testified that he didn't
> remember me, that I didn't tell him that there was no insurance on the vehicle.
>
> If the transcripts can be made available, this can be proven here today that
> Officer Fox has just once again committed perjury, that he testified he didn't
> remember. He claimed at that point not remembering me telling him that there
> was no insurance on the vehicle.

(D.I. 14, App. to State's Ans. Br. in Monroe v. State, No.94,2005 at B-22). This record

demonstrates that petitioner was afforded a "full and fair opportunity" to expose Officer

17

Fox's alleged infirmities through cross-examination, even without the suppression hearing transcript. Accordingly, the court concludes that the Delaware Supreme Court's denial of the instant claim was not based on an unreasonable determination of facts, and also did not involve an unreasonable application of Supreme Court precedent.

## 2. Superior Court's failure to subpoena witness

Petitioner asserts that he had spotted an elderly woman ("Ms. Church") walking up a steep hill near Fifth and Van Buren Streets before he was stopped by the police. Petitioner also asserts that he stopped to give Ms. Church a ride and that she was a passenger in his car when the police stopped him. Petitioner states that Ms. Church got out of the car just before the police approached his vehicle to ask for his license, registration, and proof of insurance.

During the suppression hearing, the Superior Court denied petitioner's oral motion for a continuance to locate Ms. Church as a witness, finding that Ms. Church's testimony was not relevant to either the motion to suppress or as a fact witness to any of the charged conduct. The Delaware Supreme Court affirmed that judgment because, given the Superior Court's focus on the underlying reasons for the *Terry* stop, even if Ms. Church had testified in the manner petitioner predicted, her irrelevant testimony "would not have changed the outcome of the suppression hearing." *Monroe*, 2006 WL 3482182, at *2.

In this proceeding, petitioner contends that the Superior Court improperly rejected his efforts to subpoena Ms. Church as a witness for trial because she would have discredited the police officers' testimony and her testimony may have exonerated him in the eyes of the jury. However, the court concludes that the Delaware Supreme

18

Court's rejection of this argument constituted a reasonable application of Supreme Court precedent. First, petitioner himself explained during the suppression hearing that he only needed Ms. Church to verify that he did not lie about her being a passenger in the car at the time Officer Fox signaled him to stop. (D.I. 14, App. to State's Ans. Br. in *Monroe v. State*, No.94, 2005, at B-11) Second, petitioner has neither alleged nor demonstrated that Officer Fox's knowledge or lack of knowledge regarding Ms. Church's presence in petitioner's car was relevant to the underlying reasons for the officers' *Terry* stop. And finally, the court again refers to the portion of the trial transcript revealing that petitioner told the judge, in front of the jury, that he was attempting to attack Officer Fox's credibility and establish that the officer committed perjury after Officer Fox stated that he did not remember seeing a female passenger in petitioner's vehicle. *See supra* at 17. Given this record and the irrelevance of Ms. Church's potential testimony to the underlying reasons for the officers' *Terry* stop, the court concludes that the Delaware Supreme Court's decision affirming the Superior Court's refusal to subpoena Ms. Church was based on a reasonable determination of facts and constituted a reasonable application of Supreme Court precedent. Accordingly, the court will deny claim two in its entirety for failing to satisfy the requirements of § 2254(d).

## C. Procedurally Barred Claims: Claims Three, Four, Five, and Six

Petitioner presented claims three, four, five, and six to the Delaware Supreme Court on post-conviction appeal, but the Delaware Supreme Court denied the claims as procedurally barred under Delaware Superior Court Criminal Rule 61(i)(3) due to petitioner's failure to raise the claims on direct appeal. By applying the procedural bar

19

of Rule 61(i)(3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984) that its decision rested on state law grounds. This court has consistently held that Rule 61 is an independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Thus, the court cannot review the merits of claims three through six absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Petitioner alleges the ineffective assistance of appellate counsel as cause for his procedural default of the instant four claims. However, only ineffective assistance rising to the level of a Sixth Amendment violation can constitute cause for a procedural default and,[5] as explained earlier in the text of this opinion, appellate counsel's "failure" to raise these issues on direct appeal did not rise to the level of constitutionally ineffective assistance of counsel. Therefore, the court concludes that petitioner has failed to demonstrate cause for not presenting claims three, four, five, and six on direct appeal.

In the absence of cause, the court will not address the issue of prejudice. Moreover, the court concludes that petitioner's failure to present claims three through six to the Delaware Supreme Court should not be excused under the "miscarriage of justice" exception to the procedural default doctrine, because he has failed to provide "new reliable" evidence that can establish his actual innocence. Accordingly, the court

---

[5]*McClesky v. Zant*, 499 U.S. 467, 494 (1991).

will deny claims three, four, five, and six as procedurally barred.

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* 3d Cir. L.A.R. 22.2 (2011). The court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

For the reasons stated above, the court concludes that petitioner's habeas application must be denied. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI. CONCLUSION

For foregoing reasons, the court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254. An appropriate order will be entered.